IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HUNTER MAINTENANCE & LEASING CORP., INC., | ) ) ) | |
| Plaintiff, | ) ) | Case No.   18 C 6585 |
| v. | ) ) | Judge Robert W. Gettleman |
| THE UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Hunter Maintenance & Leasing Corp., Inc. has brought this action against the United States seeking a refund with statutory interest of its payment to the Internal Revenue Service ("IRS") of $58,147.99 for late filing penalties assessed under 28 U.S.C. § 6699 for the years 2011 through 2013.   Plaintiff claims that the late filing penalty should be abated for reasonable cause because plaintiff was "disabled due to the incapacity of its Chief Executive Officer ("CEO") and Chief Financial Officer "(CFO"), each of whom were suffering from cancer from which each ultimately died.   The parties have filed cross-motions for summary judgment. For the reasons described below, defendant's motion is granted and plaintiff's motion is denied.

## BACKGROUND

The underlying facts of this case are largely undisputed.   Plaintiff is an Illinois corporation formed in 1973 with its principal place of business at 527 S. Wells Street, Chicago, Illinois.   It is engaged in the business of maintaining and repairing vehicles and equipment owned by Elgin Sweeping Services, Inc.   It has, and had during the relevant period, approximately 12 employees.   From 2003 to date its President was Christopher Cacciatore, who

was also 50% owner. For the years in question it had nine shareholders, all Cacciatore family members.

Plaintiff is just one of several companies started by Victor Cacciatore, the family patriarch. There are 19 such companies, all closely held and commonly owned by family members. Plaintiff is an S corporation, governed by subchapter S of the Internal Revenue Code ("IRC"), 26 U.S.C. § 1361. S corporations are not assessed income tax directly, 26 U.S.C. § 1363(a), but they are required to file annual returns reporting their income on a form 1120S, and issue Schedule K-1s to its shareholders. 26 U.S.C. § 6037(a). Plaintiff failed to timely file its returns for the 2010 through 2014 tax years, but it did issue the shareholder K-1s and its shareholders paid whatever portion of any tax liability that was due.[1]

For the tax years at issue in the instant case, 2011 through 2013, the IRC provided that an S corporation that does not timely file its annual income tax return is liable for a penalty equal to $195 per shareholder for every month the return is late, not to exceed 12 months. 26 U.S.C. § 6699(a)(1), (b). Plaintiff did not file its returns until January 2017.

According to plaintiff, throughout the relevant time period until his death on December 30, 2013, Victor Cacciatore was "treated as and effectively exercised the authority and control of CEO and Chairman of the Board over all of the family of companies," including plaintiff. In that capacity he controlled and exercised final decision making authority over all financial and tax related matters for all the companies, including plaintiff.

---

[1] An S corporation's shareholders are taxed on their respective shares of the corporation's income. 26 U.S.C. § 1366(a)(1).

2

In 1996 George Tapling, a certified public accountant, was hired by Jos. Cacciatore & Co. According to plaintiff, Tapling "functioned as, possessed and exercised the responsibilities of Chief Financial Officer ("CFO")" for all the Cacciatore companies, including plaintiff, until his death in May 2016.   Despite being called plaintiff's "de facto" CFO, Tapling was never an employee, officer, or director on the books and records of plaintiff, or any company other than Jos. Cacciatore & Co.

Nonetheless, it is undisputed that Tapling was solely responsible for preparing and filing the federal and state income tax returns for all the Cacciatore companies, as well as preparing and issuing the Schedule K-1s to the shareholders.   All IRS notices and correspondence issued to any of the companies were given directly to Tapling unopened.

Tapling directly reported to and was supervised by Victor until Victor's death in 2013. After Victor's death, Tapling reported to and was supervised by Peter Cacciatore, President of Jos. Cacciatore & Co.

Sometime in 2008 or 2009 Victor was diagnosed with myelodysplastic syndrome ("MDS"), a cancer affecting the bone marrow.   He became increasingly ill over the ensuing years, later being diagnosed with bladder cancer and an aggressive fast growing tumor that could not be treated through surgery because of the MDS.   According to plaintiff, by 2010 through his death in 2013, Victor was incapacitated by his illness, which prevented him from exercising his responsibilities.

In 2010, Tapling himself became ill with melanoma skin cancer.   He ultimately died from the disease in 2016 after it metastasized.   Despite his illness, he remained in his position with Jos. Cacciatore & Co., and continued to act as the "de facto" CFO of the companies.   He

3

did not outwardly exhibit any behavior or symptoms that would lead anyone to question his abilities until shortly before his death. Unbeknownst to the companies, however, beginning in 2010 Tapling failed to file the income tax returns for plaintiff and some of the tax returns for some of the other companies. He did in fact prepare plaintiff's returns, and issued the Schedule K-1s, but failed to file the 1120S forms and other returns for 2010 through 2013.

After Tapling's death, unopened IRS notices were found in his desk. The companies hired an outside firm to review the income tax filing compliance for all of the companies. It found that Tapling had prepared plaintiff's tax returns but failed to file them. In March 2017 that firm filed the delinquent returns for plaintiff.

## DISCUSSION

Section 6699 of the IRC (26 U.S.C. § 6699) provides that "if any S corporation required to file a return under § 6037 for any taxable year – (1) fails to file such return at the time prescribed therefor . . . such S corporation shall be liable for a penalty . . . unless it is shown that such failure is due to reasonable cause." Reasonable cause is not defined in the section and the IRS has not issued any regulations interpreting § 6699. Regulations have been enacted under the analogous section 6651(a)(1), which imposes a penalty for failure to file other types of returns "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." Under that standard a taxpayer demonstrates "reasonable cause" if it can show that it "exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time period. 26 C.F.R. § 301.665-1(c)(1); ATL & Sons Holdings, Inc. v. Commissioner of Internal Rev., 2019 WL 1220942 *6 (T.C. 2019)(holding the same standard applies to penalties imposed under § 6699).

4

A taxpayer bears a heavy burden to prove that the failure to timely file was "due to reasonable cause." U.S. v. Boyle, 469 U.S. 241, 245 (1985). In Boyle, the seminal case discussing reasonable cause, an executor of an estate hired an attorney to prepare and file the federal estate tax return. The attorney filed a return three months late, resulting in a penalty. The estate argued that the penalty should be waived for reasonable cause, arguing that the executor had in good faith relied on the attorney to timely file their returns. The Court rejected this argument, holding that the taxpayer could not demonstrate reasonable cause because Congress placed the burden of prompt filing on the taxpayer, not on an agent or employee of the taxpayer. The Court articulated a bright line rule that reliance could not "function as a substitute for compliance with an unambiguous statute." Id. at 252. "The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for late filing under [§ 6699]." Id.

Defendant argues that Boyle is directly on point, and that plaintiff's failure to timely file was due solely to its reliance on its agent Tapling, who was supposed to file their returns but failed to do so. Tapling, according to defendant, was simply an agent of plaintiff, and under Boyle, reliance on an agent does not constitute reasonable cause excusing a late filer from penalties.

In response, plaintiff points out that the Boyle court distinguished the question of the taxpayer's misplaced reliance on an agent to perform the known statutory duty, from the question of the taxpayer's inability to perform. Boyle, 469 U.S. at 248-49 n.6. The Court stated (id.):

> The principle underlying the IRS regulations and practices – that a taxpayer
> should not be penalized for circumstances beyond his control – already recognizes
> a range of exceptions which there is no reasons for us to pass on today.   This
> principle might well cover a filing default by a taxpayer who relied on an attorney
> or accountant because the taxpayer was, for some reason incapable by objective
> standards of meeting the criteria of "ordinary business care and prudence."   In
> that situation, however, the disability alone could well be an acceptable excuse for
> a late filing.

Relying on this footnote, and Justice Brennan's statement in his concurrence in Boyle

that the "ordinary care and prudence" standard should be "applicable only to the ordinary person

– namely, one who is physically and mentally capable of knowing, remembering, and complying

with the filing schedule," (id. at 253), plaintiff argues that it was incapable of filing because of

the incapacity of Victor and Tapling, the persons who effectively controlled the company.

There can be no dispute that an individual taxpayer's illness and severe health problems

can constitute reasonable cause to file late.   See e.g., Meyer v. Comm., T.C. Memo 2003-12

(2003).   Whether a corporation can be incapable of timely filing based on incapacity of a

corporate officer is another matter.   Plaintiff relies on In Re American Biomaterials Corp., 954

F.2d 919 (3d Cir. 1992), in which the corporation's CEO and chairman of the board and its CFO

and Treasurer were embezzling funds.   The court affirmed a lower court's decision that these

officers' actions "incapacitated the corporation" and rendered it unable to comply with the IRC.

The court noted that these officers were the "only two corporate officers with responsibility for

[the corporation's] tax filing.   Id. at 922.

As the parties point out, numerous cases have struggled with the application of disability

in the corporate context.   See Atlas Therapy, Inc. v. U.S., 66 F.Supp.2d 1203, 1207-08 (N.D.

Ala. 1999) (and cases cited therein).   The cases, like the instant case, generally involved a key

financial management employee who failed to carry out the tax obligations assigned to him and then hid it from the corporation.   Id.   Most of the courts recognize that there are "at least some instances in which the conduct of an officer might render a company disabled from timely [filing], and that such situations are quite rare."   Id.

    The instant case is not one of those rare situations.   Despite the number of cases cited in plaintiff's briefs, only American Biomaterials concluded that the corporation was incapable of timely filing, and that was based on its officers' criminal activity.   All the other cases equated the officers' activity to that of the attorney in Boyle.   In the instant case, plaintiff relied on Tapling.   And regardless of whether Tapling was its agent or its employee, plaintiff cannot simply rely on his illness to demonstrate the corporation's inability to file.   The corporation had a president and board members independent from Tapling and Victor, all of whom had responsibility to ensure that the corporation carried out its statutory duties.   Nor has plaintiff presented any evidence of any ordinary business controls to ensure that it met its responsibility. Indeed, it admits that it ceded all responsibility to Tapling without any oversight.   This does not demonstrate ordinary and prudent business practice.   Consequently, the court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.[2]

---

[2] Plaintiff points out that the government abated late filing penalties for some of the other Cacciatore companies "some of which" were based on the same reasonable cause arguments made by plaintiff in the instant case.   Even if this is true, and the court has no evidence to demonstrate the reasoning of those decisions, they are irrelevant to the instant decision, which must be based solely on the facts presented to the court.   Nor does the court have any evidence as to the corporate structures of the other companies or whether those companies can or did demonstrate ordinary and prudent business practices.

## <u>CONCLUSION</u>

For the reasons described above, defendant's motion for summary judgment [Doc. 29] is granted and plaintiff's motion for summary judgment [Doc. 28] is denied.


**ENTER:**     **February 25, 2020**


**Robert W. Gettleman**
**United States District Judge**

8